IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

ANTHROPIC, PBC,

Plaintiff-Appellee,

v.

UNITED STATES DEPARTMENT OF
WAR, et al.,

Defendants-Appellants.

No. 26-2011

**MOTION TO HOLD APPEAL IN ABEYANCE**

This appeal raises issues that legally and factually overlap with those presented in the pending petition for review in *Anthropic PBC v. U.S. Department of War*, No. 26-1049 (D.C. Cir.). Expedited briefing is already underway in that case, and the D.C. Circuit has scheduled oral argument for May 19. In light of those expedited proceedings and the possibility that the resolution of the issues in that case will narrow the issues presented for this Court's review—if not obviate the need for this Court's review altogether—the government respectfully requests that the Court hold this appeal in abeyance, pending resolution of the petition for review in the D.C. Circuit. Plaintiff does not consent to this motion.[1]

---

[1] The government has concurrently filed a separate motion for a 30-day extension of time—from April 30, 2026, to Monday, June 1, 2026—in which to file its opening brief, in part to give this Court sufficient time to resolve this motion before that brief is due.

1. Plaintiff in this case is a software company that has developed an artificial-intelligence model called Claude. Since 2024, the government has employed plaintiff's model for various uses, through both direct contracts with plaintiff and integration of plaintiff's software into products or services provided by other government contractors. Of particular relevance, plaintiff's software has been deployed by the Department of War for highly sensitive uses, including for classified work and to support ongoing military operations. *See generally* Dkt. No. 134, at 3-4 (D. Ct. Op.).

In fall 2025, plaintiff and the Department began negotiations around deployment of plaintiff's software on the Department's GenAI.mil platform. *See* D. Ct. Op. 5. In those discussions, the Department requested that plaintiff permit the Department (and its contractors and subcontractors) "to use all versions of Claude for 'all lawful uses.'" *Id.* Plaintiff refused to agree to these terms. *See id.* at 5-6. And over the course of negotiations, plaintiff's behavior increasingly concerned the Department. At a high level, various aspects of plaintiff's behavior raised concerns within the Department that plaintiff might manipulate or restrict the functionality of its software to enforce its own policy judgments about how the Department's use of the software should be limited. *See generally* Dkt. No. 96-2, at 6-9.

Those concerns ultimately resulted in the Secretary's determining that the use of plaintiff's products or services in the Department's systems "presents a supply chain risk." Dkt. No. 96-2, at 2. The Secretary thus invoked two independent but overlapping sources of authority—10 U.S.C. § 3252 and 41 U.S.C. § 4713—to

designate plaintiff a national security supply chain risk. *See id.*; *see also* D. Ct. Op. 9-10. As a result of those designations, plaintiff is excluded from consideration for certain Department contracts and may not receive subcontracts for work involving certain Department systems. *See* 10 U.S.C. § 3252(d); 41 U.S.C. § 4713(k).

In addition to the Secretary's two overlapping designations, the Secretary wrote a social media post, which includes the following statement: "Effective immediately, no contractor, supplier, or partner that does business with the United States military may conduct any commercial activity with" plaintiff. *See* D. Ct. Op. 8-9. The government has explained that it does not understand this statement to have any independent "legal effect at all" and that the Department "does not intend to terminate any contractors on the basis that they have a commercial relationship with [plaintiff] that [i]s separate from their work for" the Department. D. Ct. Op. 16 (second alteration in original) (quotation omitted). Moreover, the President issued a social-media post that stated in part that he was directing federal agencies to cease using plaintiff's technology. *See id.* at 8. Following that post, "several federal agencies" took actions to terminate the use of plaintiff's products. *Id.* at 16-17.

2. Plaintiff then challenged the government's various actions in two separate suits. In this suit, brought originally in district court, plaintiff challenged the Secretary's designation under 10 U.S.C. § 3252, as well as the Secretary's and President's social-media statements. The district court granted plaintiff a preliminary injunction generally prohibiting the government from enforcing the § 3252

designation and the statements in the two social-media posts. *See* Dkt. No. 135. That preliminary injunction is based on the court's conclusion that plaintiff is likely to succeed on its claims that the challenged actions violate plaintiff's First Amendment and due process rights and that the Secretary's actions were contrary to law and arbitrary and capricious. *See* D. Ct. Op. 19-37.

Separately, as required by the relevant statute, *see* 41 U.S.C. § 1327(b), plaintiff filed a petition for review of the Secretary's designation under 41 U.S.C. § 4713 in the United States Court of Appeals for the District of Columbia Circuit. *See Anthropic PBC v. U.S. Department of War*, No. 26-1049 (D.C. Cir.). And plaintiff moved for a stay of the designation pending that Court's review. *See* Emergency Stay Motion, *Anthropic PBC*, No. 26-1049 (D.C. Cir. Mar. 11, 2026). There, as here, plaintiff contends that the Secretary's actions violated its First Amendment and due process rights and were contrary to law and arbitrary and capricious. *See generally id.*

On April 8, the D.C. Circuit denied plaintiff's stay motion. The court stated that it believed that the motion "raise[d] novel and difficult questions" on the merits with "no judicial precedent shedding much light on the questions presented." *See* Statement 2, *Anthropic PBC*, No. 26-1049 (D.C. Cir. Apr. 8, 2026) (per curiam). But the court declined to "broach the merits at this time," because it concluded that plaintiff had "not shown that the balance of equities cuts in its favor." *Id.*; *see id.* at 4 ("On one side is a relatively contained risk of financial harm to a single private

4

company.  On the other side is judicial management of how, and through whom, the Department of War secures vital AI technology during an active military conflict.").

At the same time, the D.C. Circuit granted plaintiff's request to expedite consideration of its petition for review on the merits.  The court believed that "substantial expedition" of the petition for review was warranted, because plaintiff "raise[d] substantial challenges to the determination and will likely suffer some irreparable harm during the pendency of this litigation."  Statement 4, *Anthropic PBC*, No. 26-1049 (D.C. Cir.).  The court thus entered a briefing order that culminates in oral argument in less than a month, on May 19, 2026.  *See* Order, *Anthropic PBC*, No. 26-1049 (D.C. Cir. Apr. 8, 2026).

3.  Under the circumstances, it is in the interest of the parties and the Court for this interlocutory appeal to be held in abeyance pending the D.C. Circuit's expedited resolution of the petition for review.  An abeyance will properly conserve the parties' and the Court's resources by avoiding potentially needless proceedings in this Court, while the parties await an expedited decision by the D.C. Circuit that may narrow the grounds presented by this appeal or even obviate the need for this Court's intervention altogether.

The factual background of, and legal issues presented by, the two cases substantially overlap.  The two cases arise out of the Secretary's contemporaneous determinations under two substantially overlapping statutes that plaintiff presents a national security supply chain risk.  Those two determinations have substantially

5

overlapping effects and are based on the same concerns, the same recommendation memorandum, and likely very similar administrative records. And plaintiff's challenges to the determinations raise very similar legal issues, including whether the determinations violated plaintiff's First Amendment and due process rights, whether the Secretary's concerns reflect the type of risk with which the statutes are concerned, and whether the Secretary's determinations were reasonable and reasonably explained. Thus, after the district court's opinion in this case, plaintiff filed a letter in the D.C. Circuit explaining to that court that "the issues" resolved by the district court's opinion "substantially overlap with those presented by" the petition in the D.C. Circuit. *See* Letter, *Anthropic PBC*, No. 26-1049 (D.C. Cir. Mar. 26, 2026).

Moreover, although plaintiff also challenges in this case two social-media posts in addition to the § 3252 designation, many of plaintiff's arguments about those posts—including that they violate plaintiff's First Amendment and due process rights—substantially overlap with its arguments about the designation. And the government has explained its view that the Secretary's post, at the least, has no independent legal effect beyond the effect of the designation.

Thus, abeyance will properly conserve the resources of the Court and the parties because issues in this case could be effectively resolved or narrowed by the disposition of the petition for review in the D.C. Circuit. As explained, the § 4713 designation at issue there has substantially similar (indeed, broader) effect than the § 3252 designation at issue in this case. Thus, if the D.C. Circuit were to uphold the

6

§ 4713 designation, that may practically moot the government's concerns about the preliminary injunction of the § 3252 designation and thus substantially narrow the issues presented for this Court's resolution. And indeed, such a resolution may ultimately obviate the need for this Court's intervention in this interlocutory posture altogether.

Conversely, if the D.C. Circuit were to vacate the § 4713 designation, its reasoning may cause the government to reconsider its views about the appropriate path forward in this case as well, again potentially narrowing the issues presented for this Court's resolution. At an absolute minimum, the D.C. Circuit's reasoning is likely to bear on the issues presented in this case, such that it would benefit the parties to await that decision before briefing nearly identical issues in this case. That is particularly true given that—as the D.C. Circuit explained—these cases present "novel and difficult questions" on the merits with "no judicial precedent shedding much light on the questions presented." Statement 2, *Anthropic PBC*, No. 26-1049 (D.C. Cir.). And they do so in a national-security context where the Court should be hesitant to unnecessarily opine on, or resolve, these difficult and contested questions.

At the same time, plaintiff will face no prejudice from holding this appeal in abeyance. At plaintiff's request, the D.C. Circuit has substantially expedited its consideration of plaintiff's petition for review, such that any abeyance here is unlikely to be protracted. And in any event, plaintiff has received a preliminary injunction in

district court and will maintain the benefit of that injunction while this appeal remains in abeyance or until final judgment is entered on the merits.

4.  Counsel for plaintiff has provided the following statement regarding plaintiff's position on this motion: "Anthropic takes no position at this time, and intends to file a written response with the Court once it has reviewed Defendants' motion."

Respectfully submitted,

SHARON SWINGLE

*/s/ Sean R. Janda*

SEAN R. JANDA
BRIAN J. SPRINGER
(202) 514-3388
  Attorneys, Appellate Staff
  Civil Division
  U.S. Department of Justice
  950 Pennsylvania Ave., N.W.
  Washington, D.C. 20530

APRIL 2026

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 1764 words. This motion also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Garamond 14-point font, a proportionally spaced typeface.

*/s/ Sean R. Janda*
Sean R. Janda